Samuel H. Hofstadter, J.
The petitioner Cayley Mill Corporation (Cayley), of South Carolina, which finishes textile goods, in 1954 made a claim of $23,522.42 for commission finishing services against the respondent Princeton Rayon Oorp. (Princeton), of New York, under a letter and quotation sheet of December 29, 1953. Princeton disputed the claim and also asserted counterclaims of about $54,000 against Cayley. When Cayley commenced a proceeding for the arbitration of this dispute, Princeton in April, 1954 sought a stay of the arbitration in this court, based on its contention that it had not agreed to arbitration. Princeton’s application was litigated to the Court of Appeals which, in June, 1955, ruled that a substantial issue of fact was presented as to the making of an agreement to arbitrate which should be determined after trial and remitted the matter to this court for further proceedings in accordance with its opinion (Matter of Princeton Rayon Corp. [Gayley Mill Corp.], 309 N. Y. 13). This issue came on for trial before Mr. Justice Di Falco and a jury in December, 1956; during the trial *595 the parties stipulated upon .the record that judgment be entered by consent directing them to proceed to arbitration. Pursuant to this stipulation a resettled judgment was entered on December 26, 1956, which directed the parties to “ proceed immediately to arbitrate ” their controversies at the American Arbitration Association in accordance with its Commercial Arbitration Rules. The resettled judgment provided for the designation by each party of an arbitrator and for the designation of the third arbitrator by Mr. Justice Di Falco. It contained this important statement of the necessary qualifications of the arbitrators: “No arbitrator may be selected or appointed who would be disqualified under said Arbitration Rules or have any connection or association with either party or their attorneys which would disqualify a person from being a juror ”. There was the further provision that if the arbitrator designated by the parties was disqualified, refused to serve or was disabled in any way, “ the party designating that arbitrator” should designate a successor arbitrator. The designees of the parties and the designee of Mr. Justice Di Falco were named in an order made on December 17, 1956.
By letter of January 15,1957, Cayley’s attorneys commenced the arbitration before the American Arbitration Association. This letter directed the Association’s attention to the provision for the qualification of the arbitrators and requested the Association to make the necessary investigation to determine their qualifications. Facts disclosed by the Association’s investigation prompted Cayley to object to the qualifications of the arbitrator designated by Princeton. Princeton did not acquiesce in the objection so made, but opposed the disqualification of its arbitrator both before the Association’s Arbitration Committee, which denied Cayley’s challenge, and in a proceeding thereafter brought by Cayley in this court. That proceeding resulted in an order of July 18,1957, which disqualified Princeton’s arbitrator and directed Princeton to designate a successor in accordance with the relevant provisions of the December 26, 1956 resettled judgment as to the qualification of an arbitrator, which qualifications were quoted verbatim in the order. In upholding Cayley’s position, Mr. Justice Conlon wrote a full opinion, from which it appears that not alone had Princeton’s president and the arbitrator designated by it had social relations, but that each had designated the other as arbitrator for his corporation in prior arbitrations and that there had been an acquaintanceship between Princeton’s designee and its attorney (Matter of Gayley Mill Corp. [Prmceton Rayon Corp.], 17 Misc 2d 183).
*596 Thereafter Princeton designated a second arbitrator whose qualifications under the standards already stated Gayley challenged, first before the Association’s Arbitration Committee, where the challenge was denied, and then before this court. The asserted disqualification of the second arbitrator was based primarily on the social relationship between the designee and Princeton’s attorney and the telephone request made by Princeton’s attorney rather than by the American Arbitration Association that the designee serve. The order to show cause bringing on the application for the disqualification of Princeton’s second designee specifically sought the designation by the court of his successor, upon his disqualification. This application came on before Mr. Justice Benvenga who by order of December 12, 1957 referred it to an Official Referee to hear and report with his recommendations. The motion on the report of the Official Referee was noticed for January 5, 1959, after the expiration of the term of Mr. Justice Benvenga as a Justice of this court, and is accordingly now before me for disposition.
The learned Referee reports that the established facts leave no doubt that the second designee does not qualify as a juror. He found the existence of a social relationship between Princeton’s attorney and the designee and that there was no justification for the telephone call made by the attorney to the designee, before the designation. More significant, however, is the revelation for the first time at the hearings before the Referee of the conduct of a substantial volume of business over the last three years (over $140,000) between the designee’s corporation and a corporation, other than Princeton, of which Princeton’s president is also president. The impropriety of the designation and the consequent disqualification of the designee are self-evident. Princeton now does not even resist the disqualification; indeed, before the return date of the present motion it had already attempted to designate a third arbitator. The report, insofar as it recommends the disqualification of the second designee is, therefore, confirmed.
The Referee, however, also recommends that Princeton be permitted to designate a third arbitrator. He expresses the view that Princeton should not be penalized by being deprived of the opportunity of selecting an impartial arbitrator and that it will now select an arbitrator possessing the qualifications of a juror imposed by the resettled judgment. I cannot adopt this recommendation.
When the extended litigation over the arbitrability of the controversy was brought to an end by the resettled judgment of December 26,1956, the court unquestionably intended that the *597 parties should proceed with dispatch before the arbitrators so that the dispute could be determined without further delay in the spirit of a true arbitration. The qualifications of the arbitrators were prescribed in terms too clear to admit of mistake or misunderstanding. Yet, Princeton by designating successively two arbitrators, neither of whom met these qualifications, has completely frustrated the court’s purpose. Since the facts constituting the disqualification were necessarily known to Princeton, its course cannot be regarded as other than a willful obstruction of the arbitration. Two years have gone by and because of Princeton’s two abortive designations the parties are today no nearer the determination of the controversy by the arbitrators than they were when the resettled judgment was entered on December 26, 1956. If effect is to be given to the judgment, the court must itself now designate the arbitrator whom Princeton, despite full opportunity, has failed to designate. Unless this course is taken, as Gayley prays, there may never be a proper designation. By making the designation the way will be cleared for the arbitration to proceed in accordance with the terms and intent of the resettled judgment.
Settle order.